UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

DAVID A. JANNEY,   Case No.: 6:15-bk-10209-CCJ

    Debtor.
_____/   Chapter 7

ARLENE C. MIRANDA,

    Plaintiff,   Adv. Proc. No. 6:16-ap-00026-CCJ

v.

DAVID A. JANNEY,

    Defendant.
_____/

### AMENDED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE, DISCHARGEABILITY OF DEBT OWED TO THE PLAINTIFF AND FOR AN AWARD OF DAMAGES

Plaintiff, Arlene C. Miranda ("**Miranda**"), hereby files this *Amended Complaint* against Debtor, David A. Janney (the "**Debtor**"), objecting to the Debtor's discharge pursuant to sections 727(a)(2), (3), (4), and/or (6) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), the dischargeability of the debt owed by the Debtor to Miranda pursuant to section 523(a)(6) of the Bankruptcy Code, and for an award of damages arising out of the Debtor's sexual victimization of Miranda during the course of an established counseling relationship. In support of the Amended Complaint, Miranda hereby alleges and avers as follows:

### PARTIES

1.    The Plaintiff, Miranda, is an individual residing in Orange County, Florida.

# 9942523 v3

2. The Debtor was president of OBC, Inc., which operates the Orlando Baptist Church (the "**Church**") and at all times relevant to the allegations contained herein was Senior Pastor of the Church. The Debtor is an individual residing in Orange County, Florida

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. §§ 157(a) and (b)(2)(I)-(J), and the *Amended Order of Reference*, dated February 22, 2012, entered by the United States District Court for the Middle District of Florida concerning the referral of bankruptcy matters to this Court.

4. This is an adversary proceeding to (i) object to the Debtor's discharge pursuant to sections 727(a)(2), (3), (4), and/or (6) of the Bankruptcy Code, and Fed. R. Bankr. P. 4004 and 7001(4), and (ii) to determine the dischargeability of a debt pursuant to section 523 of the Bankruptcy Code and Fed. R. Bankr. P. 4007 and 7001(6).

5. This proceeding is core pursuant to 28 U.S.C. §§ 157(b)(2)(I)-(J).

6. All conditions precedent to the filing of this action have occurred, have been performed or have been waived.

## BACKGROUND

**A.    The Debtor's Prepetition Conduct and Dischargeability**

7. Miranda was a member of the Church since 2008. She frequently volunteered with the Church's ministries, and, until recently, was highly involved and active in the Church community.

8. As Senior Pastor of the Church, the Debtor administered emotional and personal guidance to Church members generally, and emotional and personal counseling to individual Church members.

# 9942523 v3    2

9.      The Debtor started counseling Miranda in late 2009, while she experienced personal and family problems for which she needed professional emotional support and guidance.

10.     The Debtor assumed the role of counselor for Miranda and provided her emotional, family, and personal support. Miranda trusted and confided in him as her counselor.

11.     Over the course of their counselor-counselee relationship, the Debtor gradually started to abuse Miranda's trust and confidence by making sexual advances toward her. In late 2015, he started to show up at her house unannounced, learned her jogging route and started to follow her while she jogged, and sent her inappropriately sexual text messages.

12.     In early September 2015, during the course of their counseling relationship, the Debtor texted Miranda about his sexual fantasies about her.[1]

13.     Eventually, the Debtor asked Miranda to meet him at the Church offices on or near the campus of the Church, where they engaged in sexual intercourse.

14.     Immediately following the sexual encounter, the Debtor continued to text Miranda regarding the incident and its effect on him.[2]

15.     Emotionally destabilized and stricken with guilt, Miranda approached Don Norman, the Senior Adults Pastor of the Church, seeking counseling and practical guidance, which he provided to Miranda. She explained to Don Norman that she was involved in an extra-marital affair and it was causing her emotional distress to keep it a secret at the direction of the married man.

---

[1]     *See* Composite Ex. "A," pp. 1-3.

[2]     *Id.* at pp. 4-8.

16. Don Norman initially provided Miranda counseling regarding the affair and its effects on her emotional state, but once he learned the affair was with the Debtor, he told her she had a duty as a Church parishioner to protect the Debtor, the Church, and the community by keeping the affair quiet and silently repenting and praying.[3]

17. When the Debtor learned Miranda disclosed the affair to Don Norman, he sent her threatening text messages regarding her and her children, and demanded she keep quiet about the affair.[4]

18. Shortly thereafter, OBC, Inc., on behalf of the Debtor, hired John-Erik Moseler to manage the scandal and minimize the financial and public-perception consequences of the Debtor's sexual victimization of Miranda.

19. John-Erik Moseler is a frequent guest preacher at the Church and is employed by churches as a "fixer" or consultant. He specializes in helping churches deal with the aftermath and media fallout of sexual and fraudulent misconduct of pastors in order to minimize the damage to public perception and protect church tithe revenue. OBC, Inc., on behalf of the Debtor, used John-Erik Moseler's consulting services for past scandals, including a 2013 lawsuit related to the Debtor's fraudulent use of charitable donations.

20. After internal meetings and discussions, the Debtor, Don Norman, and John-Erik Moseler—together with Dallas McLaurin and Alisha Jimenez, who are also Church officers— collectively decided to try to cover up the Debtor's sexual victimization of Miranda, and tried to buy her silence with a non-disclosure agreement.

---

[3] *Id.* at pp. 26-28.

[4] *Id.* at pp. 9-25.

21. Dallas McLaurin is Vice President of OBC, Inc. and a Church elder. He was the corporate representative of the Church in its efforts to silence Miranda regarding the Debtor's sexual victimization of her.

22. Alisha Jimenez is an attorney licensed to practice law in the State of Florida. Upon information and belief, she represented the Church and the Debtor in a variety of matters.

23. On December 2, 2015, Alisha Jimenez asked Miranda to come to her law office late in the evening and by herself to discuss a potential agreement with the Church in order to obtain her silence about the Debtor's conduct. At that time, Alisha Jimenez represented Miranda in a paternity matter regarding one of her children, and Miranda reasonably believed Ms. Jimenez was representing her interest in relation to this incident and the potential agreement.[5]

24. Instead, Alisha Jimenez with the Debtor, Don Norman, John-Erik Moseler, and Dallas McLaurin participating by phone, presented Miranda with a non-disclosure agreement, which provided that OBC, Inc. would fund a trust to make weekly payments to Miranda in the amount of $375.00 starting December 4, 2015 (the "**NDA**"). In return, Miranda would not disparage the Debtor, OBC, Inc., or otherwise disclose her affair with the Debtor. Alisha Jimenez counseled Miranda to sign the NDA.

25. After OBC, Inc. failed to honor its commitment under the NDA, Miranda sought independent counsel, which eventually led to lawsuits to rescind the NDA and for damages which are being actively defended.[6]

26. On February 7, 2016, the Debtor resigned as Senior Pastor.

---

[5] *See In re: Miranda & Edds*, Orange County Case Number 2005-DR-020813.

[6] Orange County Case Numbers 2015-CA-11240-O and 2016-CA-001639-O.

**B.     The Debtor's Postpetition Concealment of Assets**

27.     On December 3, 2015 (the "**Petition Date**"), the Debtor filed a *Voluntary Petition* [ECF No. 1] (the "**Petition**") for relief under Chapter 7 of the Bankruptcy Code.

28.     The Debtor's Petition was filed together with his *Schedules* and *Statement of Financial Affairs*, both of which were signed under penalty of perjury.  *See* ECF No. 1 at pp. 36 and 44.  The foregoing documents, which contained the Debtor's initial (and, presumably, complete) disclosures to the Court and creditors regarding the extent of his assets and liabilities, conclusively stated that the Debtor *did not hold any* (i) non-publicly traded stock and/or interests in incorporated and unincorporated businesses, *see* Schedule A/B [ECF No. 1] at 14 (Item 19), or (ii) claims against third parties.  *See id.* at 16 (Item 33).

29.     Following the completion of the meeting of creditors on January 5, 2016, and after receiving a *Notice of 2004 Examination* from one of his other creditors, Multibank 2009-1 CML-ADV Ventures, LLC ("**Multibank**")—which sought, among other things, production of the Debtor's bank account statements and account histories concerning the Roth IRA's, retirement account, and life insurance policy that the Debtor had claimed as exempt on his initial Schedule C—the Debtor amended his *Schedules* [ECF No. 13] (the "**First Amended Schedules**") and *Statement of Financial Affairs* [ECF No. 14] (the "**First Amended SOFA**") to reflect his (i) previously undisclosed closing/transfer of funds from a non-exempt account held at Morgan Stanley and (ii) ownership interest in an entity known as "Villa City Development Group II, LLC," which the Debtor has listed as having an "undetermined" value.

30.     To date, the transfers and use of the funds from the Debtor's Morgan Stanley account are not fully disclosed in the Debtor's *Schedules* and *Statement of*

*Financial Affairs*.[7] The Debtor, however, does not dispute that he transferred non-exempt funds prior to the Petition Date to fund nominally exempt accounts.[8]

31. Neither the Debtor's First Amended Schedules nor the First Amended SOFA identified any claims held by the Debtor against third parties, or, as discussed below, the full measure of his interests in foreign business entities.

32. Despite the Debtor's reluctance to disclose the full scope of his assets and liabilities, following the expiration of the March 7 deadline for the filing of discharge objections under 11 U.S.C. §§ 727(a)(2) through (7), Miranda's counsel was able to independently obtain information reflecting that the Debtor (i) held undisclosed interests in numerous Costa Rican business entities and (ii) was a party to pending lawsuit against the Costa Rican government seeking damages in the amount of $103 million. Upon receipt of this information, Miranda's counsel worked with the Debtor to schedule a further Rule 2004 Examination of the Debtor on May 3, 2016 (the "**May 3 Deposition**").

33. At his May 3 Deposition, the Debtor reaffirmed the general accuracy of his First Amended Schedules and SOFA, and, among other things, generally represented that,

>   i. although he intended to file a third amendment to his Schedules, the changes contained therein would not be material (*i.e.*, adding assets in value of more than $500) and, if anything, would result in the removal of assets;
>
>   ii. that he did not own any stock of any foreign corporation; and

---

[7] The transfers and use of the foregoing funds are more fully described in Multibank's *Amended Adversary Complaint for Denial of Discharge and Exception to Discharge*, see ECF No. 10 in Adv. Case No. 6:16-ap-00036-CCJ, at ¶¶ 8-10.

[8] *See David A. Janney's Answer to Amended Compl.* [ECF No. 13 in Adv. Case No. 6:16-ap-00036-CCJ] at ¶¶ 8-10.

      iii.     that he did not know of any undisclosed interest in any pending litigation against a third party.

34. The foregoing testimony—as well as other related testimony provided by the Debtor at his May 3 Deposition, which suggested that he did not have assets beyond those previously listed in his filings before this Court—was false.

35. During the course of the Debtor's examination at the May 3 Deposition, counsel to Miranda questioned the Debtor with regard to various documents, which revealed that the Debtor held the following assets and interests that had not been disclosed in his Chapter 7 bankruptcy proceeding:

    i.     The Debtor holds the previously undisclosed percentage ownership interests in the following nine (9) Costa Rican entities (collectively, the "**Costa Rican Companies**"):

- Las Olas Lapas Uno, SRL (1% interest);
- Mis Mejores Anos Vividos, S.A. (1% interest);
- La Estacion de Esterillos, S.A. (1% interest);
- Bosques Lindos de Eserillos, S.A. (1% interest);
- Montes Development Group, S.A. (1% interest);
- Cerros de Esterillos, S.A. (1% interest);
- Inversions Cotsco C&T, S.A. (1% interest);
- Trio International, Inc., S.A. (1% interest); and
- La Canicula, S.A. (.49% interest).

    ii.    The Debtor is a party to a lawsuit against the government of Costa Rica claiming $103 million in damages;

    iii.   The Debtor has retained counsel to represent him and act on his behalf in the action against the government of Costa Rica; and

36. In addition to contradicting numerous other statements and submissions made in connection with this proceeding, the Debtor's testimony at the May 3

Deposition further confirmed that, in response to a request seeking documents relating to assets in jurisdictions outside of the United States, the *Debtor's Response to Notice by Multibank 2009-1 CML-ADV Venture, LLC of Taking Rule 2004 Examination for the Production of Documents* failed to disclose the existence of any documents, including as it relates to his interests in the Costa Rican Companies or the $103 million litigation against the Costa Rican government.

37. On May 18, 2016, the Debtor confirmed the accuracy of all of the information that had been disclosed in the May 3 Examination by filing his second amended *Schedules* [ECF No. 81] (the "**Second Amended Schedules**") and *Statement of Financial Affairs* [ECF No. 82] (the "**Second Amended SOFA**"), which, for the first time in this proceeding, disclosed (i) the Debtor's ownership interests in the Costa Rican Companies; (ii) the Debtor's ownership of a claim against the government of Costa Rica with an unknown value; and (iii) the Debtor's ownership interest in (x) Pinecrest Acquisition and Development, LLC, (y) TPG Grupo Primero Sociedad Anonima, and (z) American Academies Association, all of which the Debtor lists as having no value.

## COUNT I
### (BREACH OF FIDUCIARY DUTY)

38. Miranda incorporates her allegations, exhibits and statements contained in Paragraphs 1 through 37 above, as though fully set forth herein.

39. As Senior Pastor of the Church, the Debtor undertook the responsibility of providing emotional, family, and personal counseling to Miranda during a time when she was in a delicate emotional state and in need of help.

40. The Debtor solicited Miranda's trust and confidence regarding her emotional, family and personal issues, and Miranda trusted the Debtor to counsel and help her, and not to take advantage of her.

41. As a result of the pastoral counselor-counselee relationship between the Debtor and Miranda, the Debtor owed fiduciary duties to Miranda.

42. The Debtor breached those duties by victimizing Miranda, whose emotional vulnerability led her to seek refuge in his counseling. Instead of providing her the emotional support and counseling she needed, he took advantage of their special relationship by making sexual advances and betraying the trust imposed in him by Miranda.

43. The Debtor was obligated to act for or give advice to Miranda for her benefit, and Miranda relied on the Debtor's experience, skill, expertise, professional knowledge, and counseling.

44. The Debtor used his superior position and influence over Miranda, which was acquired through their special relationship, to her detriment and for his own benefit and sexual satisfaction.

45. As a direct and proximate result of the Debtor's breach of their fiduciary duties, Miranda suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a final judgment in her favor and against the Debtor, award her damages, and grant such other and further relief as this Court deems just and proper.

## COUNT II
## (DENIAL OF DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6))

46. This is a cause of action seeking to determine that the debt owed by the Debtor to Miranda, as set forth in Count I above (hereinafter, the "**Debt**") is non-dischargeable under applicable law, including pursuant to section 523(a)(6) of the Bankruptcy Code.

47. Miranda realleges and reincorporates by reference Paragraphs 1 through 37 and 39 through 45 above, as though fully set forth herein.

48. Pursuant to section 523(a)(6) of the Bankruptcy Code, a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  Pursuant to section 101(15) of the Bankruptcy Code, the term "entity" includes a "person."  *Id.* at § 101(15).

49. As set forth above, the Debt arose as a result of the Debtor's willful and malicious injury to Miranda.

50. The Debtor's actions were willful and malicious because he was in a superior position as both Senior Pastor and President of the Church over Miranda, a Church member, among other things, he:

    i. Knowingly undertook the responsibility of providing emotional, family and personal counseling to Miranda during a time when she was in a delicate emotional state and in need of help;

    ii. Knowingly solicited Miranda's trust and confidence regarding her emotional, family and personal issues, and intended for Miranda to trust that he would counsel and help her, and not take advantage of her;

    iii. Knowingly entered into a pastoral counselor-counselee relationship with Miranda, resulting in the Debtor owing fiduciary duties to Miranda;

  iv. Knowingly, willfully and maliciously breached those duties by victimizing Miranda, whose emotional vulnerability led her to seek refuge in his counseling. Instead of providing her the emotional support and counseling she needed, he took advantage of their special relationship by making sexual advances and betraying the trust imposed in him by Miranda;

  v. Knowingly showed up at Miranda's house unannounced, learned her jogging route and followed her while she jogged, sent her inappropriately sexual text messages, and threatened her and her children when she started to expose his conduct; and

  vi. Knowingly attempted to cover up his victimization of Miranda with the assistance of Dallas McLaurin, Don Norman, John Eric-Moseler, and Alisha Jimenez, who counseled Miranda to remain quiet regarding the victimization, drafted the NDA, negotiated the NDA, counseled Miranda to sign the NDA, and/or coerced or improperly caused Miranda to sign the NDA; failed to honor the commitments under the NDA, forcing Miranda to retain independent counsel and institute multiple lawsuits which are being actively defended.

51. The Debtor was obligated to act for or give advice to Miranda for her benefit, and Miranda relied on the Debtor's experience, skill, expertise, professional knowledge, and counseling.

52. The Debtor used his superior position and influence over Miranda, which was acquired through their special relationship, to her detriment and for his own benefit and sexual satisfaction.

53. As a direct and proximate result of the Debtor's breach of his fiduciary duties, Miranda suffered damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the dischargeability of the Debt pursuant to section 523(a)(6) of the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

## COUNT III
## (DENIAL OF DISCHARGE UNDER 11 U.S.C. § 723(a)(2))

54. This is a cause of action seeking to object to the entry of the discharge.

55. Miranda realleges and reincorporates by reference Paragraphs 1 through 37 and 39 through 45 above, as though fully set forth herein.

56. Pursuant to section 727(a)(2) of the Bankruptcy Code, a debtor is not entitled to a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2).

57. The Debtor, with intent to hinder, delay, and/or defraud his creditors, concealed and/or permitted to be concealed property of the estate after the filing of the Petition and, accordingly, is not entitled to a discharge pursuant to section 727(a)(2) of the Bankruptcy Code.

58. The Debtor concealed that he is a 1 percent owner of each of eight Costa Rican Companies, *i.e.*, Las Olas Lapas Uno, SRL; Mis Mejores Anos Vividos, S.A.; La Estacion de Esterillos, S.A.; Bosques Lindos de Eserillos, S.A.; Montes Development Group, S.A.; Cerros de Esterillos, S.A.; Inversions Cotsco C&T, S.A.; and Trio International, Inc., S.A.,) and a .49% owner of a ninth Costa Rican company, *i.e.*, La Canicula, S.A.

59. The Debtor also concealed that he is a party to a lawsuit against the government of Costa Rica claiming $103 million in damages in the aggregate.

60. All of the foregoing assets constitute property of the estate in this proceeding.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge pursuant to section 727(a)(2) of the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

## COUNT IV
## (DENIAL OF DISCHARGE UNDER 11 U.S.C. § 723(a)(3))

61. This is a cause of action seeking to object to the entry of the discharge.

62. Miranda realleges and reincorporates by reference Paragraphs 1 through 37 and 39 through 45 above, as though fully set forth herein.

63. Pursuant to section 727(a)(3) of the Bankruptcy Code, a debtor is not entitled to a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."  11 U.S.C. § 727(a)(3).

64. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which the Debtor's financial condition or business transactions might be ascertained and, accordingly, is not entitled to a discharge pursuant to section 727(a)(2) of the Bankruptcy Code.

65. The Debtor concealed destroyed, mutilated, falsified, or failed to keep or preserve any recorded information relating to his 1 percent ownership interest in each of eight Costa Rican Companies.—*i.e.*, Las Olas Lapas Uno, SRL; Mis Mejores Anos Vividos, S.A.; La Estacion de Esterillos, S.A.; Bosques Lindos de Eserillos, S.A.; Montes

Development Group, S.A.; Cerros de Esterillos, S.A.; Inversions Cotsco C&T, S.A.; and Trio International, Inc., S.A.—and/or his .49% ownership interest in a ninth Costa Rican company, *i.e.*, La Canicula, S.A.

66. The Debtor has also concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information relating to his interest in a lawsuit against the government of Costa Rica claiming $103 million in damages.

67. Among other things, the Debtor's testimony at the May 3 Deposition further confirmed that, in response to a request seeking documents relating to assets in jurisdictions outside of the United States, the *Debtor's Response to Notice by Multibank 2009-1 CML-ADV Venture, LLC of Taking Rule 2004 Examination for the Production of Documents* failed to disclose the existence of any documents, including as it relates to his interests in the Costa Rican Companies or the $103 million litigation against the Costa Rican government.  Upon information and belief, the Debtor concealed, destroyed, mutilated, falsified, or failed to keep or preserve any of this recorded information and, consequently, is not entitled to a discharge.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge pursuant to section 727(a)(3) of the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

**COUNT V**
**(DENIAL OF DISCHARGE UNDER 11 U.S.C. § 723(a)(4))**

68. This is a cause of action seeking to object to the entry of the discharge.

69. Miranda realleges and reincorporates by reference Paragraphs 1 through 37 and 39 through 45 above, as though fully set forth herein.

70. Pursuant to section 727(a)(4) of the Bankruptcy Code, a debtor is not entitled to a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4).

71. The Debtor knowingly and fraudulently made false oaths and accounts in connection with the case and, accordingly, is not entitled to a discharge pursuant to section 727(a)(4) of the Bankruptcy Code.

72. Specifically, the Debtor knowingly and fraudulently made false oaths and accounts in various filings before this Court, including his prior Schedules and Statements of Financial Affairs, which were signed under penalty of perjury, and concealed that (i) he is a 1 percent owner of each of eight Costa Rican Companies, *i.e.*, Las Olas Lapas Uno, SRL; Mis Mejores Anos Vividos, S.A.; La Estacion de Esterillos, S.A.; Bosques Lindos de Eserillos, S.A.; Montes Development Group, S.A.; Cerros de Esterillos, S.A.; Inversions Cotsco C&T, S.A.; and Trio International, Inc., S.A.,), (ii) a .49% owner of a ninth Costa Rican company, *i.e.*, La Canicula, S.A., and (iii) a party to a lawsuit against the government of Costa Rica claiming $103 million in damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge pursuant to section 727(a)(4) of the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

## COUNT VI
### (DENIAL OF DISCHARGE UNDER 11 U.S.C. § 723(a)(6))

73. This is a cause of action seeking to object to the entry of the discharge.

74. Miranda realleges and reincorporates by reference Paragraphs 1 through 37 and 39 through 45 above, as though fully set forth herein.

75. Pursuant to section 727(a)(6) of the Bankruptcy Code, a debtor is not entitled to a discharge if "the debtor has refused, in the case—(A) to obey any lawful order of the court . . . ." 11 U.S.C. § 727(a)(6).

76. The *Notice by Multibank 2009-1 CML-ADV Venture, LLC of Taking Rule 2004 Examination for the Production of Documents* (the "**2004 Duces Tecum**") issued by Multibank to the Debtor in this proceeding constituted a request for documents that, pursuant to this Court's Local Rules, has the same effect as a subpoena and, absent objection, is enforceable as an Order of this Court.  *See, e.g.*, Local Rule 2004-1(f) ("No subpoena is necessary to compel the attendance of, or the production of documents by, the debtor at an examination of the debtor.").

77. Although the 2004 Duces Tecum sought all documents relating to the Debtor's assets in jurisdictions outside of the United States, the Debtor refused to produce any documents reflecting his interests in the Costa Rican Companies or his interest in the pending lawsuit against the Costa Rican government seeking $103 million in damages, instead representing that he had no such documents.

78. The Debtor's refusal to produce such documents violated the validly issued 2004 Duces Tecum and constitutes a prohibited refusal to comply with Court-sanctioned process in this proceeding in contravention of section 727(a)(6) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment denying the Debtor's discharge pursuant to section 727(a)(6) of the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

Dated: July 7, 2016.

Respectfully submitted,

/s/ Roy S. Kobert
ROY S. KOBERT, ESQ.
Florida Bar No. 777153
GRAY ROBINSON, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
roy.kobert@gray-robinson.com
Telephone: (407) 843-8880
Facsimile: (407) 244-5690

and

FERNANDO J. MENENDEZ JR.
Florida Bar Number 0018167
Gray Robinson, P.A.
333 S.E. 2nd Ave., Suite 3200
Miami, Florida 33131
fernando.menendez@gray-robinson.com
Telephone: (305) 416-6880
Facsimile: (305) 416-6887

*Attorneys for Arlene C. Miranda*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing has been furnished electronically via CM/ECF service to: **Peter N Hill**, peter@herronhilllaw.com, Herron Hill Law Group, PLLC and **Melissa Youngman,** Melissa A. Youngman, P.A., melissayoungman@melissayoungman.com *(Counsel for the Defendant)*, 1851 West Colonial Drive, Suite 100, Orlando, FL 32804; and via U.S. Mail to David Janney, 1515 Ensenada Drive, Orlando, FL 32825-8309, this 7th day of July, 2016.

 /s/ Roy S. Kobert
ROY S. KOBERT, ESQ.
Florida Bar No. 777153

# COMPOSITE EXHIBIT "A"